[L. A. No. 502.   Department One.—November 6, 1899.]

LOS ANGELES HOLINESS BAND, Appellant, v. J. H.
   SPIRES et al., Respondents, and LOS ANGELES HOLI-
   NESS BAND, Intervenor and Respondent.

CORPORATION—IRREGULARITIES IN FORMATION—DE FACTO CORPORATION—
   COLLATERAL ATTACK.—Where persons associated together for reli-
   gious purposes attempt to form themselves into a corporation
   for such purposes, and for upward of sixteen years in good faith
   carry on the business for which it was organized or attempted
   to be organized as a corporation, they constitute a corporation
   *de facto* notwithstanding there were defects in the incorporation
   proceedings, and the validity of the corporation cannot be at-
   tacked in a collateral proceeding.

ID.—PROCEEDING BY STATE.—A corporation *de facto* can only be deprived
   of a franchise or property in a direct proceeding on behalf of
   the state.

APPEAL from a judgment of the Superior Court of Los
Angeles County and from orders refusing a new trial and to
strike out portions of a cost bill.   Lucien Shaw, Judge.

The facts are stated in the opinion of the court.

Will D. Gould, for Appellant.

Charles H. McFarland, for Intervenor and Respondent.

George S. Hupp, for Defendants and Respondents.

VAN DYKE, J.—This is an action to quiet title.   The court
below found the following facts: Prior to April, 1881, an asso-
ciation of persons were in the habit of meeting together for re-
ligious services in the city and county of Los Angeles, calling
themselves the Los Angeles Holiness Band, and in April, 1881,
six of the members of said Holiness Band signed and acknowl-
edged articles of incorporation under the name of the Los An-
geles Holiness Band, incorporating for religious and benevolent
purposes.   And in such articles of incorporation the six mem-
bers who thus signed and acknowledged the same were chosen
trustees of the corporation.   These articles were filed in the
office of the county clerk of the county of Los Angeles on the
eighth day of April, 1881.   A copy of the same was filed in the

office of the secretary of state, and a certified copy of the articles of incorporation, certified to by the secretary of state, was afterward filed in the office of the said county clerk. On the twentieth day of April, 1881, the secretary of state issued a charter certificate to said band, and certified that said Los Angeles Holiness Band had been incorporated for religious and benevolent purposes; said Los Angeles Holiness Band then organized and elected trustees or directors and adopted rules and by-laws for their government. After the articles had been filed and the charter thus issued, the said Los Angeles Holiness Band purchased the property described in the pleadings, and which is the property in controversy, from S. C. Hubbell, for four hundred dollars, and received a deed from said Hubbell in the name of the Los Angeles Holiness Band, a corporation. Said deed recited the receipt of said four hundred dollars as the purchase price, and that at that time Hubbell had good title to the said premises. The Los Angeles Holiness Band, its trustees and members, erected a house of worship upon said property about the year 1881, and thereafter continuously and uninterruptedly from that time up to April, 1896, held regularly religious services upon said premises, at least upon two different days in each week, and from that time the said Los Angeles Holiness Band elected trustees as required by law to act as trustees of said corporation, and such trustees took charge and control of said property from 1881 up to the bringing of this action for the purposes for which said organization was formed, and said Los Angeles Holiness Band held itself out as a corporation, and in good faith claimed to act and did act as a corporation in all its various transactions. That on December 30, 1896, it elected as trustees, to serve as such for one year thence ensuing, the seven persons who were trustees at the time of the bringing of the suit, who were in control and possession of said property up to the time said band was dispossessed by persons pretending to be trustees of the plaintiff corporation, in the month of April, 1897.

In the month of April, 1897, C. F. McKee, D. C. Roberts, M. Whisler, G. W. Morgan, and L. R. Gay attempted to incorporate under the name "Los Angeles Holiness Band," and did prepare and file articles of incorporation in which it was shown

that they were elected trustees or directors of the Los Angeles
Holiness Band for the coming year, and said articles of incor-
poration were filed with the county clerk of said county of Los
Angeles, and a copy thereof filed with the secretary of state,
and thereafter a copy of said articles was filed in the office of
the said county clerk, and the certificate or charter from the
secretary of state was afterward issued to said corporation in
said month of April; and said Los Angeles Holiness Band, as in-
corporated in 1897, thereupon during said month obtained a
deed to the property hereinbefore mentioned and referred to
from S. C. Hubbell and his wife in the name of the Los Angeles
Holiness Band.   In said month of April, while the regular
members of the Los Angeles Holiness Band, as organized in
1881, were holding their regular and accustomed religious ser-
vices upon said premises, D. C. Roberts and G. W. Morgan, and
the other persons pretending to be trustees and members of the
Los Angeles Holiness Band, as organized in 1897, entered upon
said premises, interrupted the meeting then in progress, and
announced that they took possession of said premises in the
name of the Los Angeles Holiness Band, and then and there
pretended to elect trustees for the succeeding year, and then
elected a janitor, with instructions to take charge of said prem-
ises, and to prevent persons other than members of the plaintiff
corporation from entering upon the same, and from that time
up to the time of the trial claimed and asserted title and sole
ownership to said property and to said corporate name of Los
Angeles Holiness Band, and held forcible possession of said
premises, and prevented the members and officers of the inter-
venor corporation from entering such premises or holding meet-
ings therein.

And as a conclusion of law the court found that the Los
Angeles Holiness Band, intervenor herein, is and has been a
corporation since the time of the filing of its articles of incor-
poration in April, 1881, and that such corporation, its officers
and trustees, have been carrying on the object and purpose of
such corporation since that time.   That in 1881 it acquired title
in fee simple to the property in controversy, by the conveyance
from S. C. Hubbell of that date, and is the owner of such prem-
ises in controversy, and that the attempted incorporation of the

Los Angeles Holiness Band by the parties mentioned, in April, 1897, was and is an unlawful attempt by such persons and such corporation to usurp the franchises and take possession of the property of said intervenor corporation and its corporate name, and that such articles of incorporation of plaintiff corporation, as well as its charter and the election or selection of such persons as trustees of said pretended corporation, are all fraudulent and void, and plaintiff corporation was formed solely for the purpose of defrauding the intervenor corporation of its corporate name and property. Judgment was entered accordingly in favor of the intervenor corporation and against the plaintiff for the premises in controversy and for costs.

The main point made by the appellants—in fact, the only point necessary to be considered—is that the intervenor was not a corporation, and never had any legal existence; and, therefore, that the first conveyance of Hubbell of the premises in question was void, for the reason that there was no one in being as a grantee competent to take the property. From the findings of fact, however, which are abundantly supported by the testimony, the position of the appellant in this regard is entirely untenable. If it be admitted, as contended by the appellant, that there were defects in the first incorporation proceedings, still it became a corporation *de facto* at least, and in good faith carried on the business for which it was organized or attempted to be organized as a corporation for the period of some sixteen years prior to the ouster by the plaintiff. The authorities relied upon by the appellant do not support its contention. In *McCallion v. Hibernia etc. Soc.,* 70 Cal. 167, 168, it is stated by the court: "But as articles of incorporation the certificate was legally defective for want of conformity to the statutory requirements under which it purported to have been made; but, aside from the defects which rendered it inept, Conlan and Dolan, and those acting with them in the movement, did not attempt to exercise corporate functions under it in connection with or as division No. 1 of the Ancient Order of Hibernians. Therefore, the certificate was not proof of a corporation *in esse.*" (Citing *Mokelumne Hill etc. Co. v. Woodbury,* 14 Cal. 425; 73 Am. Dec. 658; *Harris v. McGregor,* 29 Cal. 127; *People v. Selfridge,* 52 Cal. 331.) The cases thus cited are also cited in appellant's brief, and are to the same effect as *McCallion v. Hibernia*

*etc. Soc., supra.    Baker v. Ducker,* 79 Cal. 365, cited by appellant, was a case where some of the members of the society, by organizing another society under a different name, got possession of the property belonging to the old society, to wit, the First Reformed Church of the city of Stockton.  The action was by some of the members of the old society for the benefit of all to recover the property, and the trial court found that the change of name was with the intent and for the purpose of depriving the said old congregation of the benefit of their corporate franchise and property.  In affirming the judgment, this court said: "It is thus made clear that the property in question was held by the Reformed Church in trust for its members, and the defendants, even though they constituted a majority of the members, had no right and no power to divert it to the use of another and different church organization." The later case of *Wheelock v. First Presbyterian Church,* 119 Cal. 477, is in the same line.    *People v. Montecito Water Co.,* 97 Cal. 276, 33 Am. St. Rep. 172, cited by the appellant, was a proceeding by the state in the nature of a *quo warranto,* and not, as in this case, a collateral attack in litigation between private parties.    These cases do not touch the question whether defects in the formation of a corporation can be inquired into in a collateral proceeding, as attempted in this case. On this point the code itself, it would seem, is decisive. "The due incorporation of any company claiming in good faith to be a corporation under this part, and doing business as such, or its right to exercise corporate powers, shall not be inquired into collaterally in any private suit to which such *de facto* corporation may be a party." (Civ. Code, sec. 358.)

It has been frequently held that, although many of the acts required to be performed in order to make a complete organization of the corporation may have been irregularly performed or entirely omitted, yet such irregularities and defects will not defeat the incorporation where the questions are raised collaterally. (*Rondell v. Fay,* 32 Cal. 361; *Stockton etc. R. R. Co. v. Stockton etc. R. R. Co.,* 45 Cal. 680; *Bakersfield etc. Assn. v. Chester,* 55 Cal. 101; *People v. La Rue,* 67 Cal. 530; *Golden Gate etc. Co. v. Joshua Hendy etc. Co.,* 82 Cal. 186; *Lakeside Ditch Co. v. Crane,* 80 Cal. 185.)

It requires a direct proceeding on behalf of the state to deprive a corporation *de facto* of a franchise or property.

The judgment and orders refusing to strike out portion of cost bill, and denying motion for a new trial, are affirmed.

Harrison, J., and Beatty, C. J., concurred.

Hearing in Bank denied.