SAMUEL FREEMAN *vs.* JULIA ANN FREEMAN and JAMES W. FREEMAN.

Where the plaintiff, being the owner of land, gave the same, by parol, to the defendants, and the use thereof, so long as they, or either of them, should live, and the defendants went into possession of the land, and occupied it, made improvements and paid a portion of the taxes thereon; *Held,* that this was a gift so far executed as to entitle the donees to a specific performance of it by the donor.

*Held, also,* that the acceptance of the land by the defendants as a gift, and their occupancy of it and their improvements upon it, pursuant to the gift, with the approbation of the donor, rendered the gift irrevocable; it being executed by the parties, except that no deed was delivered.

*Held, further,* that the gift partook of the nature of a contract, and became binding upon the donor as a contract, by a good and valuable consideration moving from the donees; by their changing their place of residence, and spending several years upon the land when it yielded but very little; and by their making valuable improvements on the land, and paying taxes thereon.

That the donees were, in equity, entitled to a life estate in the premises, and that it would be against conscience to allow the donor to revoke the gift; and that it should be specifically enforced, by a decree directing the execution of a deed by the donor, conveying the premises to the donees, to have and to hold the same so long as they or either of them should live.

THIS action was brought to recover the possession of about forty-five acres of land situated in the town of Taylor, in the county of Cortland. It was tried before a referee, upon whose decision judgment was entered and docketed in Cortland county, in favor of the plaintiff. The defendant Julia Ann Freeman, who alone defended the action, appealed from the judgment to the general term.

*Waters & Waters,* for the plaintiff.

*Miner & Kern,* for the defendants.

*By the Court,* BALCOM, P. J. The conclusions of fact, found by the referee, are as favorable to the defendant Julia Ann Freeman, as are necessary to present the question as to the correctness of his conclusions of law, that

the plaintiff was entitled to recover the possession of the land in dispute, notwithstanding the facts. The answer, so far as the facts are concerned, is substantially sustained by the conclusions of fact found by the referee.

The plaintiff purchased the land and paid $700 therefor, on the 7th day of February, 1860. He immediately wrote to the defendants, who were then residing in the town of Smithville, in the county of Chenango, as follows:

"February, 1860, James and Julia Freeman; I have just succeeded in buying a small place for you. There is a small but comfortable log house and barn on it. You can get a good living on it after a few years. It is for you and yours as long as you live, or as long as you have a mind to stay on it. It is about half mile from school. I shall be down with teams to move you on to it as soon as the going will permit. SAMUEL FREEMAN."

Before the end of February, 1860, the defendants and their children, in pursuance of a parol gift of the land by the plaintiff to the defendants, went into possession of the land and occupied the same to the time of the trial of this action in March, 1867.

When the defendants took possession of the land, only about three acres of it had been cleared. They cleared about twelve or fifteen acres more of the land and fenced the same, and they also built an addition to the house on the land, being assisted more or less each year by the plaintiff, who resided not a great way off. The defendants paid a portion of the taxes on the land during their occcupancy of the same.

The evidence, aside from the plaintiff's letter, clearly sustains the conclusion of the referee that the plaintiff gave by parol the land to the defendants, and the use thereof so long as they or either of them should live.

The plaintiff is the father of the defendant, James W. Freeman. For some cause, not explained by the evidence,

James W. Freeman left his wife and the land, and went to live with the plaintiff, his father, the last of April, 1866, and did not thereafter return to the land, or live with his wife, the defendant Julia Ann Freeman.

James. W. Freeman has not defended the action; and it is probable (though there is no finding of the referee on the question,) he connived with the plaintiff to turn his wife and children, who remained on the land, out of the possession thereof. But as the gift of the land was to the defendants, husband and wife, jointly, James W. Freeman, the husband, could not do any act that would deprive his wife of her rights, if she has any, by reason of the gift and what she and her husband did upon the land.

The plaintiff sent his team after the defendants when they moved from Smithville upon the land in question, on the 16th day of February, 1860.

It is fair to infer from the evidence that all the plaintiff did upon the land after the defendants went into possession of the same, was prompted by the love and affection he had for the defendants and their children, and that he was actuated by the same motive when he paid portions of the taxes on the land. According to his letter to the defendants, he did not think they could get a living on the land for the first few years after they should take possession of the same. It undoubtedly was for that reason that he assisted them after they took possession of the land.

It is hardly necessary to refer to the well settled principle that, in equity, part performance takes a parol agreement for the sale of real estate out of the operation of the statute of frauds. (*See Malins* v. *Brown,* 4 *Comst.* 403.) According to our statutes, nothing in them "shall be construed to abridge the powers of courts of equity, to compel the specific performance of agreements, in cases of part performance of such agreements." (2 *R. S.* 135, § 10.)

Whether a gift of land may be so far executed as to enti-

tle the donee to a specific performance of it by the donor, is the question to be determined in this case.

In the case of *the Lessee of Syler and wife* v. *Eckhart,* (1 *Binney,* 378.) Tilghman, Ch. J. in delivering the opinion of the court says: "It has been settled that where a parol agreement is clearly proved, in consequence of which one of the parties has taken possession and made valuable improvements, such agreement shall be carried into effect. We see no material difference between a sale and a gift; because it certainly would be fraudulent conduct in a parent to make a gift which he knew to be void, and thus entice his child into a great expenditure of money and labor, of which he meant to reap the benefit himself." And it was held in that case, that a parol gift of lands by a father to his son, accompanied with possession, and followed by the son making improvements on the land, is valid, notwithstanding the act of frauds and perjuries.

Judge Black charged the jury in *Hugus* v. *Walker,* (12 *Penn. R.* 173,) as follows, to wit: "Where a man makes a parol sale and receives the purchase money, he cannot set up the statute of frauds against the validity of the contract. So, where he makes a gift by parol, either to his son or to a stranger, if the donee has gone into possession in pursuance of the gift, and made valuable improvements on it, the land so given cannot be claimed back again, and the possession resumed by the donor." The judgment in that case was affirmed. And Coulter J. in delivering the opinion of the court, said, in respect to the charge of Judge Black to the jury: "I will let the charge speak for itself. It will carry itself through."

The principles laid down in the above two cases, have never been departed from by the courts of Pennsylvania, but have been sustained and reiterated in other cases. (*See Mahon* v. *Baker,* 2 *Casey,* 519.)

The following cases sustain, to some extent, the proposition that the acceptance of the land in dispute, as a gift,

by the defendants, and their occupancy of it, and their improvements on it pursuant to the gift, with the approbation of the plaintiff, render the gift irrevocable : *King's heirs* v. *Thompson*, (9 *Peters*, 205 ;) *Pope* v. *Henry*, (24 *Verm. R.* 560 ;) *Dugan* v. *Gittings*, (3 *Gill*, 138.)

The gift was executed by the parties, except that no deed was executed by the plaintiff and delivered to the defendants, so as to show that the defendants had a freehold estate in the land.

I am of the opinion we ought to hold that the gift partook of the nature of a contract, and became binding upon the plaintiff in the nature of a contract, by a good and valuable consideration, that moved from the defendants, by their changing their place of residence, and spending six years of their lives upon the land, when it yielded very little, and by their making valuable improvements on the land and paying taxes thereon. It is not improbable that the defendants, within the time they occupied the land in dispute, might, if they had lived elsewhere, have earned and saved property of greater value than this land. Had the defendant James W. Freeman remained on the land with his wife, it would have been unjust and tantamount to a fraud, for the plaintiff to have turned the defendants out of possession. And is it not more unjust and more like fraud for the plaintiff, with the consent, if not connivance, of James W. Freeman, to turn the wife of the latter out of possession of the land ?

It seems to me the conduct of the plaintiff towards the defendant, Julia Ann Freeman, should be characterized as fraudulent, and be held fraudulent.

The gift of the land to the defendants was a direct encouragement to them to spend their lives upon it, labor on it, improve it and to expend money upon it, and it would be against conscience to allow the plaintiff to revoke the gift. And I am of the opinion the gift should be specifically enforced on the ground that it has become irrevo-

cable, and valid as a contract, by reason of the consideration that has moved from the defendants in consequence of the gift; which consideration they could not recover of the plaintiff, if its value could be ascertained or estimated in dollars. (*See Rhodes* v. *Rhodes,* 3 *Sandf. Ch.* 279.)

The case is one in which justice cannot be done without holding the gift of the land to the defendants irrevocable and enforcing it in favor of the defendant, Julia Ann Freeman.

The plaintiff's counsel relies on the case of *McCray* v. *McCray,* (30 *Barb.* 633,) to sustain the decision of the referee. In that case a new trial was granted on the ground that the defendant had offered to prove a parol contract for the land in dispute, and part performance of it, which was improperly rejected. The question whether the defendant could have held the land in dispute, n that case, by a parol gift, was not decided; and it was not necessary to determine that question, for there was a contract that controlled the decision.

I am aware that the general rule is, that a gift, strictly speaking, is not regarded in the light of a contract, because it is voluntary, and without consideration. And yet every gift which is made perfect by delivery, is an executed contract; for it is founded on the mutual consent of the parties, in reference to a right or interest passing between them. (*See* 2 *Kent's Com.* 9*th ed. p.* 574.) It is no innovation to hold that the gift of the land in this case, partook of the nature of a contract and became binding upon the plaintiff as a contract, when the consideration, in consequence of the gift, passed from the defendants. And it was not necessary that the plaintiff should be benefited by the consideration. It must be deemed to have passed from the defendants at the instance and request of the plaintiff. He solicited them to take the land, and move on to it, occupy it and improve it, at a loss to them, for they could not get a living on it. He assisted them in

moving upon it. And although he was prompted to do so by the love and affection he had for the defendants, he must be held responsible for the situation in which the defendants were at the time he undertook to turn them out of the possession of the land.

My conclusion is that the defendants were, in equity, entitled to a life estate in the land in dispute at the time the action was commenced; and that the referee should have found, as a conclusion of law, that the defendant, Julia Ann Freeman, was entitled to a judgment in her favor, and entitled to a deed conveying to her and her husband the land in dispute, to have and to hold the same so long as they or either of them should live. (*See Lobdell* v. *Lobdell,* 33 *How. Pr.* 347.)

If these conclusions are correct, the judgment in the action should be reversed, and a new trial granted, costs to abide the event.

So decided.

[Broome General Term, July 21, 1868. *Balcom, Boardman, Parker* and *Murray,* Justices.]